IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | C/R No. 3:05-374-MBS |
| vs. ) | |
| ) | **ORDER** |
| Marco Terrell Hutchinson ) | |
| ) | |
| Defendant. ) | |
| ) | |

Defendant Marco Terrell Hutchinson is charged with armed bank robbery in violation of 18 U.S.C. § 2113(a) and 2113(d). The matter was tried before a jury commencing April 17, 2006. The jury returned a verdict of guilty on April 19, 2006.

This matter is before the court on Defendant's motion for a new trial pursuant to Fed. R. Crim. P. 33, or in the alternative for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). Defendant filed his motion on April 26, 2006. (Entry 95) The government filed responses on April 27, 2006 and on July 31, 2006.

### MOTION FOR A NEW TRIAL

Defendant contends he is entitled to a new trial because of a statement made by the government during closing argument. The court disagrees.

The government called Defendant's mother, Lynda Hutchinson-Belton, during its case-in-chief. Ms. Hutchinson-Belton testified that Defendant had been possession of the 1990 red Pontiac Firebird described by witnesses as leaving the scene of the robbery. Transcript of Jury Trial, Vol. I (Entry102), p. 207. She testified that Deputy Clarence Faulkenberry of the Lancaster Sheriff's Department had come to her house the morning of the robbery inquiring as to where the car was and in whose possession. Id. Ms. Hutchinson-Belton testified that Defendant had come to her home that evening driving the vehicle. Id. The government then inquired:

Q. Okay. Nobody – did you ever file any kind of stolen motor vehicle report with any authorities on February the 23rd?

A. No. Why would I?

Q. Well, that was my next point. Nobody stole your 1990 red Firebird prior to your son coming to the residence that evening did they, ma'am?

A. Not that I know of. But I was concerned as to why the sheriff did come by that morning.

Q. When you had conversations with your son that day, he didn't say anything about somebody stealing your car, did he?

A. No, he was – he asked me what was going on too.

Q. But he never mentioned anything to you about anybody stealing the car?

A. No. I asked him had he got a speeding ticket or something, because the sheriff had been by, of Lancaster County, and was inquiring about the car. And he said not that he knew of.

Id., 209-10.

On redirect, the government inquired of Ms. Hutchinson-Belton:

Q. Ms. Belton, did you ask your son who had his car?

A. No, I didn't.

Q. He's been charged with arm robbery – bank robbery for the last 14 months, you didn't ask him who had his car?

A. He's been charged, but he said he didn't rob the bank. So, I mean, what am I asking that for? I said no.

Q. So, you didn't want to know who had his car, the car that was used in the bank robbery, you have never asked him that question?

A. No.

Id., p. 220.

During closing argument, the government addressed Ms. Hutchinson-Belton's testimony. In directing the jury's attention to this testimony, the government commented:

> And you remember, I asked Ms. Belton on the witness stand . . . . No stolen police – the car, no stolen – the car isn't stolen, nobody was using that car. There is no police reports about use of a car without the owner's consent. None of that. That's why I asked her those questions. None of that. Don't you think of somebody would have stolen that car or used that car without the owner's consent you would have heard about it?
>
> "Who had the car?"
>
> "Marco had the car. My son has the car. He's got custody of the car."
>
> And you know what is amazing? If you remember, the last question I asked her on redirect, the last question I stood right there, I said, "Ms. Belton, your son has been charged with armed bank robbery for 14 months and you never asked him, 'Who had possession of that car between 9 and 9:15?'"
>
> Wouldn't any mother want to know that? This is serious business. Or is that denial? Which is also natural for any mother. Remember that question.

Transcript of Jury Trial, Vol. III (Entry 104), pp. 51-52.

After closing arguments but before the jury was charged Defendant moved for a mistrial because the government had stated, "'Don't you think if someone had used the defendant's car without consent, or if someone else was driving it, you would have heard about it?'" Id., p. 61. Defendant contended the statement constituted an impermissible comment that Defendant had not put forth evidence of a particular fact. Id. (citing Doyle v. Ohio, 426 U.S. 610 (1976)). The court denied the motion for mistrial but agreed to give the jury a curative instruction. Id. Thereafter, the jury was instructed that:

> During the closing arguments in this case, while discussing the testimony of Lynda Hutchinson-Belton, the attorney for the government stated that "If someone had used that car without the owner's consent, you would have heard about it."

> You can consider that argument, however, I instruct you that the defendant has no obligation to put forth any evidence or prove his innocence. The defendant is to be presumed innocent unless and until the government proves the defendant's guilt beyond a reasonable doubt.
>
> You may not attach any significance to the fact that the defendant did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand, and you may not consider this against the defendant in any way in your deliberations in the jury room.

Id., pp. 78-79.

Defendant contends that the government impermissibly commented during closing arguments, "If someone had taken that car without the owner's consent, you would have heard about it." According to Defendant, the jury could have interpreted the government's statement to mean that Defendant should have come forward with evidence to show that someone else had used his car, thus impermissibly shifting the burden of proof to Defendant. Defendant also contends that the government's statement constituted a comment on Defendant's decision not to testify.

Prosecutorial misconduct arises when the prosecutor's remarks were improper, and (2) such remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Chorman, 910 F.2d 102, 113, (4th Cir. 1990) (quoting United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988)).

1.   Impropriety

When viewed in the context of the prosecutor's entire closing argument, it is apparent that the prosecution was attempting to draw inferences about the consistencies in the evidence. In other words, the mother's testimony was one more link to demonstrate that Defendant had been in possession of the 1990 red Pontiac Firebird in which the bank robber had fled the scene. In addition, the statement calls into question the mother's credibility by suggesting that any reasonable parent

whose car had been implicated in a bank robbery would want to know who other than his or her child had been in possession of the vehicle, if the child denied involvement. The court concludes that the statements made by the government did not shift the burden or proof to Defendant or constitute a comment on the failure of Defendant to testify.

    2.    <u>Prejudice</u>

Even if the government's comments could be construed as improper, the comments did not result in a denial of due process. In determining whether improper remarks or conduct have prejudicially affected the a defendant's substantial right to a fair trial, the court must consider: (a) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (b) whether the remarks were isolated or extensive; (c) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (d) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (e) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (f) whether curative instructions were given to the jury. <u>United States v. Sheets</u>, 293 F.3d 175, 186 (4th Cir. 2002).

The comment at issue involves a brief statement within a much larger summary of the extensive evidence admitted at trial. As addressed above, the statement was not improper, and therefore did not have a tendency to mislead the jury or prejudice Defendant, when viewed in conjunction with the entire discussion regarding Mrs. Hutchinson-Belton's testimony. The statement consisted of a single remark within a lengthy closing argument. The comment was not an attempt to divert attention to extraneous matters within the trial, but rather to illustrate the consistency of the evidence presented and to call into question the credibility of the mother's testimony. Finally, the remark was addressed by a curative instruction speaking directly to the matter. Accordingly, the

court concludes that Defendant was not denied due process. Defendant's motion for a new trial is **denied**.

### MOTION FOR JUDGMENT OF ACQUITTAL

Defendant asserts that there was insufficient evidence to sustain a conviction. The standard governing the review of evidence involves an inquiry into whether "there is substantial evidence, taking the view most favorable to the Government, to support [the jury verdict]." United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). Substantial evidence is defined as evidence which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id.

In this case, various eyewitnesses identified Defendant, who possessed a particular physique as a University of South Carolina football player. One witness new him as a customer of a branch of the South Carolina State Credit Union where she formerly had worked. Defendant and his vehicle were observed by a customer at the drive-in window of the credit union both before and after the robbery. This customer was able to obtain the license tags of the 1990 red Pontiac Firebird. Defendant was observed by an individual in a parking lot whose car was sideswiped by the Firebird as Defendant was fleeing the scene of the crime. A loan office of the credit union recognized Defendant as someone who worked in a cellular store where she had been a customer. Another witness followed Defendant as he fled the scene and was able to observe him stuffing bundles of money into post office packages. This witness was able to obtain an unobstructed view of Defendant and make eye contact with him. The court concludes that there is substantial evidence, taking the view most favorable to the government, to support the jury verdict as to this issue.

Defendant also contends that the jury did not give a careful and meaningful review of the evidence because it deliberated only about forty-five minutes. No rule requires a jury to deliberate for any set length of time. United States v. Dolan, 120 F.3d 856, 879 (8th Cir. 1997) (quoting United States v. Penagaricano-Soler, 911 F.2d 833, 846 n.15 (1st Cir. 1990)). Given the strength of the evidence and the clarity by which counsel for both the government and Defendant presented their cases, the court concludes that the jury had ample time to review the evidence and come to a decision. Defendant's motion for judgment of acquittal is **denied.**

### CONCLUSION

For the reasons stated, Defendant's motion for new trial or in the alternative for judgment of acquittal (Entry 95) is **denied**.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

August 18, 2006

Columbia, South Carolina